UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TAYLOR AUSTIN RYAN,

    Plaintiff,

v.                                            Case No. 5:17cv54-MCR-CJK

GREGG POYTHRES, et al.,

    Defendants.

_____/

<u>ORDER</u> and
<u>REPORT AND RECOMMENDATION</u>

    This matter is before the court on the defendants' motion to dismiss the amended complaint. (Doc. 35). Plaintiff responded in opposition. (Doc. 39). Defendants then filed a reply (doc. 40) and plaintiff a surreply (docs. 41-42). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties' submissions, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part.

BACKGROUND

    Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Walton Correctional Institution. The amended complaint names three medical employees of Graceville Correctional Facility as defendants:

Gregory Poythress, J. Alvarez, and Veronika Newman. (Doc. 13). The complaint sets forth the factual allegations that follow.

Plaintiff suffers from "hypogonadism and abnormal monocyte, lymph, and eosinophils[.]" His symptoms include "pain and shrinking of the testicles, loss of muscle, fatigue, arthralg[ia], infertility, depression, growth problems, and not even feeling like a man." He previously was "diagnosed and treated with medicine for this condition due to its severity." After telling Nurse Gregory Poythress about the condition and symptoms, plaintiff asked for treatment. On December 14, 2016, Poythress "ordered labs for [plaintiff's] testosterone levels." Blood was drawn for the tests on January 5 and January 12 of 2017. On January 20, Poythress told plaintiff he "had normal levels." Poythress "reported a free testosterone level of 8.7 on the first and 8.5 on the second set of labs." Plaintiff asserts normal free testosterone levels range from 9.3 to 26.

Although plaintiff told Poythress the testosterone levels were "affecting [his] daily living" and could cause infertility, Poythress said he "would not treat [plaintiff] for these levels[.]" Poythress and Nurse Defurion "yelled at [plaintiff] and asked for [his] medical license and told [him he] was fine and to leave." Poythress, however, did give plaintiff Ibuprofen and a knee brace for his complaints "of chronic pain in [his] back, left knee, head, right ankle, and left arm." Plaintiff "mentioned a history of kidney failure," but Poythress "still insisted this was all [plaintiff] could get and

[he] shouldn't have come to prison." Plaintiff submitted grievances to Veronika Newman concerning his treatment, but she replied that plaintiff "was being treated according to 'community standards.'"

On February 22, 2017, Dr. Alvarez "order[ed] more labs," prescribed Excedrin for plaintiff's chronic migraines, and gave plaintiff "a boot pass, lower bunk and lower tier pass." Plaintiff told Dr. Alvarez about his "history of kidney failure and how the brace puts pressure on [his] osteochondroma," but Alvarez "told [plaintiff] that's all he could do and that [plaintiff] wasn't in pain it's just [plaintiff's] imagination." Blood was drawn for the lab tests on March 6, 2017. On March 16, Poythress told plaintiff he "was 'healed' and that [his] latest level of free testosterone was 10.1." Plaintiff asked Poythress "not to ignore the first two out of range results, but [Poythress] told [plaintiff] not to worry about those results because he wasn't." Poythress "also stated that he was going to ignore the first two labs results and get rid of them." Plaintiff submitted additional grievances to Newman concerning his treatment but did not receive the desired relief.

On March 23, 2017, Dr. Alvarez told plaintiff the testosterone "levels were fine," he did not have hypogonadism, and "the previous doctors [were] wrong." When plaintiff asked to see a specialist, Dr. Alvarez "laughed and told [plaintiff] he would put a referral in." Plaintiff then requested treatment for his "torn medial collateral ligament and torn [meniscus]." Plaintiff "explained the pain and that the

Ibuprofen wasn't helping and that with [his] history of kidney failure [he] shouldn't be taking NSAIDs." He asked Dr. Alvarez "to listen to the crunching sound when [plaintiff] extend[ed] the knee but [Alvarez] refused." After plaintiff described migraines and pain in other parts of his body, Dr. Alvarez said "he could [do] nothing but give [plaintiff] Naproxen and Excedrin[.]" Plaintiff notes "both are NSAIDs and are hard on the kidneys"; plaintiff also advised Dr. Alvarez those medications "do not touch the pain," but Dr. Alvarez "ignored" plaintiff's complaints.

On April 19, 2017, Dr. Alvarez told plaintiff the request to see an endocrinologist was denied, but Alvarez declined to specify who denied the request. After plaintiff reiterated his hypogonadism complaints, Dr. Alvarez informed plaintiff "there was nothing he could do." Plaintiff also "complained that the medicine [Alvarez provided] still wasn't working and that the brace [provided] for [plaintiff's] knee puts pressure on the pedunculated osteochondroma emanating from the posterior aspect of the proximal tibia . . . causing [plaintiff] even more pain than without the brace." Dr. Alvarez told plaintiff he "would have to live with the pain."

On May 23, 2017, Poythress showed plaintiff that Drs. Alvarez and Kennedy "put [plaintiff] on a deferred status, and have a conservative approach to [his] hypogonadism." Poythress stated plaintiff "was only allowed to have the [testosterone] levels checked every six months but not be given treatment or any

medicine." Plaintiff "then explained all [his] symptoms and pain all over again and was prescribed some sort of nerve medication."

Based on the foregoing, plaintiff alleges the defendants violated the Eighth Amendment by failing to provide him with adequate medical care. As relief, he seeks injunctive relief and compensatory damages. Defendants moved to dismiss the amended complaint, arguing the allegations fail to state a claim upon which relief may be granted, and plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

## LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). A few exceptions exist to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008). Further, only <u>well-pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *see also Associated Builders,*

*Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or, "nudge[] the[] claim[] across the line from conceivable to plausible[.]" *Id.* at 570.

## DISCUSSION

Deliberate Indifference

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration."). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* at 1307 (*quoting Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To show deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[T]he official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To support deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendants do not contest that plaintiff has a serious medical need. Instead, they argue the complaint fails to establish deliberate indifference because: (1) "[a]t most, the allegations do nothing more than support a potential claim for medical negligence"; and (2) the allegations simply show a disagreement over matters of medical judgment. (Doc. 35, p. 4-5). They note the complaint "references repeated occasions where plaintiff received medical treatment within the correctional facility, underwent laboratory diagnostic imaging, was provided medication for several of

Case 5:17-cv-00054-TKW-MJF   Document 43   Filed 06/12/18   Page 9 of 16

Page 9 of 16

his ailments, and . . . received repeated medical attention to those medical conditions for which he now complains." (*Id.*, p. 5).

The complaint contains factual allegations which, taken as true, are sufficient at this stage to state an Eighth Amendment claim against the defendants. Before being incarcerated, plaintiff was diagnosed with hypogonadism and treated with "testosterone cypionate, Clomid, and hCG." Plaintiff told Nurse Poythress and Dr. Alvarez about the symptoms the hypogonadism caused, including "pain and shrinking of the testicles, loss of muscle, fatigue, arthralg[ia], infertility, depression, growth problems, and not even feeling like a man." Two out of three blood tests showed plaintiff's testosterone level was below the "normal range"; the third fell close to the lower limit of the normal range. Poythress and Alvarez provided plaintiff with pain medication, a knee brace, and medical passes. But neither Poythress nor Alvarez treated the hypogonadism despite plaintiff's ongoing complaints. At this stage of the litigation, plaintiff's allegations suffice to nudge the claim over the bar set for a motion to dismiss as to Poythress and Alvarez. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 342 (6th Cir. 2014) (holding prisoner stated Eighth Amendment claim when he alleged he repeatedly complained about hypogonadism symptoms but medical staff discontinued treatment). Based upon the present scant record, the undersigned does not view this claim as simply one of a prisoner seeking to dictate the level of care he receives while in state

custody, or as a mere disagreement between prisoner and medical staff as to appropriate care. Further factual development concerning the defendant's treatment decisions, and the reasons therefor, is warranted.

Plaintiff, however, has not stated a claim against defendant Newman. The complaint alleges Newman denied grievances plaintiff submitted regarding the care received from Poythress and Alvarez. Merely denying a grievance, without personally participating in the unconstitutional conduct brought to light by the grievance, is not sufficient to establish § 1983 liability. *See O'Brien*, 592 F. App'x at 341 ("A defendant's involvement in the denial of an administrative grievance is insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983."); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.") (quotation omitted). The Eighth Amendment claim against Newman, therefore, should be dismissed.

Exhaustion

Defendants also argue plaintiff failed to exhaust his administrative remedies regarding his medical care before bringing this suit. The PLRA provides that "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n.6. Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied the plaintiff failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The grievance procedures promulgated by the Florida Department of Corrections generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). If an inmate files a medical grievance, however, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance to the warden. *See* Fla. Admin. Code r. 33-103.006(3)(e).

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in

that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (*citing Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (*citing Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Plaintiff was required to exhaust his administrative grievances before February 15, 2017, the date he turned the initial complaint over to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.). Defendants' motion claims, without elaboration, that plaintiff "has not alleged or otherwise shown compliance with the requirements of" the FDOC's grievance process. (Doc. 35, p. 12).

In his response to the motion to dismiss, plaintiff asserts he filed a formal grievance concerning his treatment in December 2016. (Doc. 39, p. 8). After the grievance was denied in late December, plaintiff says he appealed, but did not receive an answer. (*Id.*, p. 8-9). Plaintiff's failure to receive a timely response to the grievance appeal entitles him to proceed with a civil rights action. *See* Fla. Admin. Code r. 33-103.011(4) ("[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. . . . If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082 (citation omitted). But these defendants submitted no evidence (e.g., declarations or copies of plaintiff's grievances) to refute plaintiff's assertion that he appealed the denial of the December 2016 formal grievance and received no response. Based on the record before the court, defendants have not shown plaintiff failed to exhaust his administrative remedies.

Accordingly, it is ORDERED:

1.     The clerk shall update plaintiff's address to Walton Correctional Institution, 691 Institution Road, DeFuniak Springs, Florida 32433, and mail a copy of this Report and Recommendation to him at that address.

And it is respectfully RECOMMENDED:

1.     That defendants' motion to dismiss the amended complaint (doc. 35) be GRANTED IN PART and DENIED IN PART.

2.     That plaintiff's Eighth Amendment claim against defendant Newman be DISMISSED.

3.     That this matter be referred to the undersigned for further proceedings on plaintiff's Eighth Amendment claim against defendants Poythress and Alvarez.

At Pensacola, Florida, this 12th day of June, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.